**EXHIBIT E**

# DANIEL J. NUSBAUM
**265 Parkway Drive**
**Pittsburgh, Pennsylvania 15228**
**(917) 567-3168 (cellular)**
**nusbaum@gmail.com**

February 17, 2006

<u>Via Facsimile (412-481-4448) and USPS Certified Mail</u>

Glenn Hawley and Lisa Hawley, Proprietors
Monterey Bay Fish Grotto
1411 Grandview Avenue
Pittsburgh, Pennsylvania 15211

Dear Glenn and Lisa:

      I write to you not as an adversary, but as a loyal employee who is deeply troubled about the situation that has evolved regarding your establishment's proposed accommodation of my current medical needs. Please be assured that I will treat any communication between us about this matter with an appropriately strict level of confidentiality, just as I have no doubt that you will do the same.

      Over the past year, I have been diagnosed with two primary psychological disorders, Attention Deficit Hyperactivity Disorder (ADHD) and Major Depressive Disorder (MDD). As a result of these diagnoses, I have been prescribed, among other things, medications such as Adderall (Mixed Salts of a Single-Entity Amphetamine Product) and Desoxyn (Methamphetamine Hydrochloride) that are part of the amphetamine class of stimulants. These powerful and highly controlled substances have, for quite some time, been indicated for the treatment of ADHD as well as other disorders such as narcolepsy, and have been quite successful in improving the mental and physical health and well-being of many individuals who suffer from these disabilities. Amphetamines have also, in some instances, been indicated for the treatment of obesity because of their highly anorectic (*i.e.*, appetite-suppressive) effects.

      While I have undoubtedly benefited immensely from these medications in many ways, almost every medication possesses side effects. Here, the aforementioned anorectic action is one such effect of these medications that is highly negative in its consequences for someone of my physical stature. Indeed, during the period I have been pursuing this course of medication therapy, my weight has dropped from 140 pounds to 124 pounds. Maintaining my weight has been an extremely difficult challenge because of my naturally fast metabolism, highly active occupation, rigorous physical fitness regimen, and, most importantly, my lack of ability to control or predict when or how often my body will be amenable to any kind of caloric intake. Put simply, my appetite

can come and go quickly and for no reason; thus, it is most imperative that I take advantage of any opportunity I can to eat in order to meet my body's caloric needs. My doctor has been quite clear in his instructions, stating that I cannot afford to lose much more weight without incurring potentially serious negative health consequences.

In addition to this weight-related reason, another must be considered that is more immediate in its nature. Consistent with other users of these medications, I may experience a "rebound" effect when the medication begins to wear off. During this period of time, I can, among other things, become sluggish and/or easily agitated due to a concomitant low blood sugar level. Consuming food during this time helps immensely in minimizing the negative effects of any rebound that I might incur. Moreover, not only does it protect me from problems such as lightheadedness or perhaps even something worse, it also makes me more productive and elevates my mood.

One obvious ramification of this difficult reality is that my medical needs directly conflict with Monterey Bay's policy of prohibiting (for the most part) employees from eating while on shift. To be sure, there certainly exist reasonable and understandable bases for this policy; however, these reasons notwithstanding, it would seem that there could be sets of circumstances, such as mine, that would warrant fashioning exceptions to this rule. I am not disputing that you have attempted to do so. Rather, I have taken issue with two things: first, the unilateral process you have employed, in which you have both disregarded wholesale my doctor's professional conclusions, directions, and requests and explicitly refused to consider engaging in formal or informal negotiations of any kind, and second, the substantive policy itself, which is, and will continue to be, ineffective and unreasonable due to, at the very least, its complete lack of flexibility. As you may be aware, your management team has already taken disciplinary action against me for violating this policy, and has explicitly indicated its intention to condition my employment on its acceptance. Given the facts and circumstances surrounding this matter, I strongly believe that this policy is not a "reasonable accommodation" you are required to provide under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq., and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and is thus unlawfully discriminatory. Consequently, in order to protect my employment status, prevent further disciplinary action and/or retaliatory conduct regarding this matter, and preserve any rights I may possess, I have been forced to file a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").

Please understand that I have been quite reluctant to take this rather drastic step, because I very much enjoy and take pride in working for your establishment — to the point, in fact, of not even being able to think of seeking employment at another restaurant in the Pittsburgh area. Naturally, I also greatly depend upon the excellent earning potential and generous benefits your establishment provides. However, I feel as though I have been backed against a wall and presented with a most unfair and unsatisfactory ultimatum. Because the law unambiguously provides me relief in precisely these circumstances, I feel that I am left with little choice but to seek assistance

through its enforcement mechanisms. That being said, I still remain open to the possibility of negotiation, and am certainly hopeful that an amicable settlement can be reached between us. Please also understand that as of this time, I am not seeking any kinds of remedies other than my continued employment at Monterey Bay (with no changes to my employment status), the withdrawal from my employment file of any disciplinary action already taken with regard to this matter, and an eating policy that can adequately and reasonably accommodate my individual medical needs.

At this time, I do not wish to recount the series of events that have led to this correspondence. Instead, I will do so in the PHRC complaint. I would like to note, however, that much of the discussion in the meetings where I have been disciplined on this matter has, unfortunately, been fraught with a lack of compassion, understanding, and professionalism on the part of your management team, which I hope can be avoided going forward. Make no mistake about it: contrary to what one of your managers has so thoughtlessly stated, accommodating my disability is absolutely "[y]our problem." However, it is quite fundamentally my problem as well, and it is my sincere hope that we can find a way to work together as colleagues, not as opponents, to solve it.

Very truly yours,

Daniel J. Nusbaum