UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| DANIEL J. NUSBAUM, | ) |
| | ) |
| *Plaintiff*, | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| MBFG LIMITED PARTNERSHIP d/b/a | ) No. 2:07-cv-01032 (NBF) |
| MONTEREY BAY FISH GROTTO, | ) |
| | ) |
| *Defendant*. | ) |

_____

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF RESPONSIVE DOCUMENTS AND COMPLETE ANSWERS TO INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 37.1, the Plaintiff, Daniel J. Nusbaum, hereby submits the following Motion to Compel Production of Responsive Documents and Complete Answers to Interrogatories by the defendant, MBFG Limited Partnership d/b/a Monterey Bay Fish Grotto ("MBFG" or "defendant"). In support thereof, Plaintiff states as follows:

1.      The instant Motion has, unfortunately, become necessary as a result of (1) defendant's continued refusal to produce documents in its possession which are clearly responsive to one or more of the Requests for Production of Documents contained in Plaintiff's Revised First Set of Discovery Requests, and (2) defendant's failure to provide complete, non-evasive, and/or responsive answers to several of Plaintiff's Interrogatories.

2.      Defendant was served with Plaintiff's Revised First Set of Discovery Requests (the "Discovery Requests") on May 8, 2009.  (A true and correct copy of the Discovery Requests is annexed hereto as Exhibit A.)[1]

3.      On June 10, 2009, defendant served upon Plaintiff its Responses to the Discovery Requests ("defendant's Response").  (A true and correct copy of defendant's Response is annexed hereto as Exhibit B.)

5.      On August 10, 2009, Plaintiff sent defendant's counsel a letter (the "August 10 Letter") in order to attempt to informally resolve the numerous disputed matters raised by defendant's responses to Plaintiff's document requests.  (A true and correct copy of the August 10 Letter is annexed hereto as Exhibit C.)

6.      On August 14, 2009, defendant's counsel sent Plaintiff its written response.  (A true and correct copy of this letter (the "August 14 Letter") is annexed hereto as Exhibit D.)

7.      On September 4, 2009, Plaintiff sent defendant's counsel a letter (the "September 4 Letter"), this time in order to attempt to informally resolve several disputed matters relating to defendant's responses to certain of Plaintiff's Interrogatories.  (A true and correct copy of the September 4 Letter is annexed hereto as Exhibit E.)

8.      Because this Court had mentioned in its September 2, 2009 Order (*see* Docket No. [89]) that it strongly encouraged the parties to resolve discovery disputes informally going forward, Plaintiff wished to avoid filing a motion to compel only a few days after this Order was issued; accordingly, on September 8, 2009, Plaintiff sent defendant's counsel an e-mail expressing his desire to meet and confer one more time before filing a motion to compel as to the

---

[1]      Part I of the document, containing Plaintiff's Requests for Production of Documents, and Part II, containing the Interrogatories, are the only parts that are relevant to the instant Motion. With respect to Part III (Requests for Admission), the meet and confer process is still ongoing.

document requests.  He also reminded defendant's counsel that in its August 14 Letter, it had

stated that it was "continu[ing] to investigate [certain] request[s] and will provide additional

information under separate cover," but it had not yet done so.  (A true and correct copy of this e-

mail (as well as the subsequent e-mail exchanges between Plaintiff and Ms. Kepplinger

regarding the scheduling of this meet and confer discussion) is annexed hereto as Exhibit F.)

      9.     On September 10, 2009, defendant's counsel sent Plaintiff via e-mail a letter

providing the follow-up information for which Plaintiff had been waiting.  (A true and correct

copy of this letter (the "September 10 Letter") is annexed hereto as Exhibit G.)

      10.    On September 14, defendant's counsel e-mailed to Plaintiff a letter which

responded to his September 4 Letter (regarding defendant's deficient Interrogatory responses).

(A true and correct copy of this letter (the "September 14 Letter") is annexed hereto as Exhibit

H.)

      11.    The meet and confer session regarding Plaintiff's document requests was to occur

on September 15, 2009, shortly before the start of the Elliott Haney deposition.  During this

meeting, Ms. Kepplinger stated that she thought Plaintiff also wanted to discuss the issues

relating to the Interrogatories at that time.  Plaintiff responded that he planned to discuss only the

issues relating to his document requests, and that he had not yet been able to review the

September 14 Letter carefully because he had been preparing for the Haney deposition.  He

expressed his preference that they meet and confer regarding the Interrogatories in a few days,

but Ms. Kepplinger explained that she was going to be extremely busy for the next couple of

weeks, so she pressed Plaintiff to do the meet and confer for the Interrogatories then and there.

As a professional courtesy, Plaintiff agreed to do so.

12.     The September 15 meet and confer session did result in agreements between the parties as to several of Plaintiff's document requests.  However, defendant still refused to produce documents in response to certain key requests, and it also explicitly stated that it was not going to change its position on any of the Interrogatory-related matters.  Accordingly, Plaintiff has been forced to file the instant Motion.

## SPECIFIC DOCUMENT REQUESTS

**Request No. 1**

A.     **Text of the Request**

Documents sufficient to identify the name, last known address(es), last known telephone number(s), and job title(s) of all current and former employees of MBFG.

B.     **Defendant's Response**

Defendant has objected to this Request as "overly broad, unduly burdensome and as seeking information that is not relevant to any claim or defense in the instant action."  It also contends that "because the restaurant . . . has been open since 1997 and this request contains no temporal limitation, this request seeks in excess of ten years of employee information," and that "[d]ocuments identifying all the current and former employees of Defendant represents as [sic] fishing expedition."  Finally, it asserts that "the information sought is confidential and private."

C.     **Plaintiff's Attempt to Compromise**

Plaintiff has agreed to limit the applicable time frame for this Request to January 1, 2000 to the present.  (*See* August 10 Letter at 1.)  Plaintiff also offered to further limit the scope of the Request to "front of the house" ("FOH") employees only (food servers, hosts/hostesses, bussers, and managers), essentially cutting in half any purported burden that defendant had alleged.

-4-

**D.**   **Defendant's Current Position**

Defendant's position has not changed; it has continued to assert the same objections it raised in its initial Response.  (*See* August 14 Letter at 1.)

**E.**   **Argument**

As an initial matter, documents identifying current and former employees is directly relevant to the issue of whether Defendant is an "employer" under the ADA (*see* Third Am. Compl. ¶ 8), an allegation which defendant has denied in its Answer.  (*See* Answer ¶ 22.) In addition, the information sought clearly would be reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff seeks this information partly in order to identify and locate potential witnesses, including many of the individuals identified in Plaintiff's Initial Disclosures.  (Plaintiff has not yet been able to locate most of these individuals because he lacks the contact information which defendant refuses to provide.)  Defendant's assertion that the information sought "is confidential and private" is not a valid basis for withholding the requested documents, especially considering that the parties have already entered into a Nondisclosure Agreement in order to address such issues.  (*See* Docket No. [66].)  *Cf. EEOC v. Univ. of Phoenix, Inc.*, No. CIV-05-1048 JB/WPL, 2007 U.S. Dist. LEXIS 34202, at *25 (D.N.M. Apr. 10, 2007) (observing that "[a] confidentiality order . . . can serve privacy needs just as well, without allowing [one party] to have a monopoly over witness information").  Moreover, because the information sought by Plaintiff is only "the name, last known address(es), last known telephone number(s), and job title(s)" of each individual, defendant remains free to redact those portions of each document that do not serve the purpose of providing the requested information before it ultimately produces them.

While there appears to be an absence of cases in this District which address this specific situation, courts across the nation have routinely compelled the production of identifying and contact information for a party-employer's current and former employees.  *See, e.g.*, *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 622 (S.D. Ind. 2002) (ordering production of names, addresses, and phone numbers of employees "since this information provides a means to contact potential witnesses"); *Caton v. Green Tree Servs., L.L.C.*, No. 3:06-cv-75, 2007 U.S. Dist. LEXIS 56515, at *21 (N.D. W.Va. Aug. 2, 2007) ("It has been held that parties may discover addresses and telephone numbers since this information provides a means to contact potential witnesses.  Accordingly, Defendant shall provide the last known address and telephone number of former employees to Plaintiffs . . . ." (internal quotation marks and citations omitted)); *EEOC v. Univ. of Phoenix, Inc.*, No. CIV-05-1048 JB/WPL, 2007 U.S. Dist. LEXIS 34202, at *17-*19 (permitting "liberal discovery relating to the identification and location of potential witnesses"); *Bolorin v. Borrino*, No. 3:06CV1295(AWT), 2007 U.S. Dist. LEXIS 29587, at *1-*2 (D. Conn. Apr. 23, 2007) (compelling disclosure of current and former employees' home addresses notwithstanding employer's objection based on "privacy concerns"); *Hakizimana v. RYM Stations-Bedford, Inc.*, No. 08-CV-0251 (RRM) (RER), 2008 U.S. Dist. LEXIS 82263 (E.D.N.Y. Oct. 16, 2008) (ordering disclosure of names, addresses, and telephone numbers of defendant's employees during relevant time period); *Heller v. Graf*, No. 03 C 6988, 2004 U.S. Dist. LEXIS 17100, at *4 (N.D. Ill. Aug. 24, 2004) (holding that "[d]efendant must disclose the identity and location of his current and former employees . . ."); *Wolber v. Kitsap Mental Health Servs.*, No. CV04-5751 RBL, 2006 U.S. Dist. LEXIS 44766, at *6 (W.D. Wash. June 22, 2006) ("Plaintiff should have access to the names and contact information of all employees that could have knowledge of discoverable matter. . . . [T]his is not for the Defendant to define."); *Barton v.*

-6-

*Cascade Reg'l Blood Servs.*, No. C06-5644RBL, 2007 U.S. Dist. LEXIS 59424, at *3-*4 (W.D. Wash. Aug. 6, 2007) ("The Court agrees with the Plaintiff that the Defendant's attempt to keep contact and other basic employment information from the Plaintiff . . . will cause Plaintiff undue burden and expense to gather the [same] information . . . ."); *Wiegele v. FedEx Ground Package Sys., Inc.*, No. 06cv1330-JM (POR), 2006 U.S. Dist. LEXIS 90359, at *2-*4 (S.D. Cal. Dec. 12, 2006).

*    *    *    *

<u>**Request No. 2**</u>

      **A.    Text of the Request**

        Documents, including, but not limited to, brochures, pamphlets, codes of conduct, instructions, training information, policy statements, policy manuals, employee handbook, or any other publication, reflecting your policies and procedures which you distributed to your employees, officers, directors, agents, servants, representatives, persons, or entities in the last ten (10) years.

      **B.    Defendant's Response**

        "Defendant objects to this document request as overly broad in that it seeks information for a period of ten years, a period in excess of the time period Plaintiff was even employed by Defendant.  Subject to, and without waiving the foregoing objection, please see documents produced as MBFG/Nusbaum 00436-00528."

      **C.    Plaintiff's Reply and Attempt to Compromise (from his August 10 Letter)**

        Your response to Request No. 2 is grossly insufficient.  Your production of MBFG/Nusbaum 000436 – 000528 consists of (1) a blank employee file summary dated September 16, 2007, (2) a blank, single-page new employee information form, (3) two pages of

-7-

blank tax withholding forms, (4) four pages of workers compensation notices (one exclusively in Spanish), (5) nine pages of policy acknowledgement forms, (6) a uniform contract, and (7) a singular — and, apparently, recently updated — version of a Food Server training manual. Your response fails to include, for example, policy manuals and/or employee handbooks for any other positions, including, but not limited to, Assistant Manager and/or General Manager. Moreover, you have failed to include any prior version(s) and drafts of any such version(s) for any of the documents produced; indeed, while you seem to object to producing documents created outside of the time period Plaintiff was employed by Defendant, you nevertheless have produced a version of a Food Server training manual (curiously, without a cover, which normally is included as part of the manual and contains the date (month and year) of the latest revision) that could not possibly have been created until well after Plaintiff was terminated. Therefore, since your production of documents is inconsistent with the nature of your objection, it is Plaintiff's position that you have waived this objection. In an effort to facilitate further discovery, Plaintiff is willing to agree to limit the applicable time frame for this Request from January 1, 2000 to the present, but demands that you produce *all* responsive, non-privileged documents within this modified time frame as soon as possible.

**D.     Defendant's Current Position**

Defendant stated in its September 10 Letter that "[a]fter reasonable investigation, Defendant has already produced all responsive documents which exist."

**E.     Really?  That Just Doesn't Seem Plausible.**

MBFG distributes training manuals, or employee handbooks, for every FOH position, each of which is regularly updated. Plaintiff believes that, at the very least, electronically stored information — such as prior drafts and/or versions of these training

materials — exists on defendant's computer(s) but has not been produced.  At the September 15 meet and confer session, Ms. Kepplinger acknowledged that defense counsel had not actually conducted an on-site inspection of defendant's files or computer(s); more specifically, Ms. Kepplinger explained to Plaintiff that she had "asked the client, and was told that was everything they had."  This implies that defendant had, on its own, collected whatever documents it considered to be relevant, then provided them to defense counsel for review and production. While Plaintiff  probably would have been satisfied with Ms. Kepplinger's verification if it had been preceded by a firsthand search by defense counsel of MBFG's files, Plaintiff is hesitant, in light of counsel's superficial inquiry of its client and defendant's suspiciously meager production, to accept what amounts to defendant's word alone.  Plaintiff therefore requests that this Court order defendant to produce all documents, electronic or otherwise, that are responsive to this request, or, in the alternative, order defendant to specifically verify that it has produced all responsive documents in its possession, custody, or control.

*        *        *        *

## Request No. 9

### A.      Text of the Request

Documents that relate to the assignment of sections (*i.e.*, groupings of tables within the restaurant) to Food Servers in MBFG's Mount Washington restaurant.  This request specifically includes, but is not limited to, the template form that is completed (or modified) each day by a manager, used to identify the specific pager to be distributed to each server at the "premeal" meeting before each dinner shift as well as any determinations relating to the status of those servers who are assigned to be "on call" for that shift, and typically affixed to the cork bulletin board on the wall immediately to the left of the "in" door to the kitchen.

**B.**     **Defendant's Response**

"Please see documents produced as MBFG/Nusbaum 00466-00467."

**C.**     **Plaintiff's Reply (from His August 10 Letter)**

Notwithstanding Plaintiff's effort in this Request to be highly-specific and descriptive about which documents he was seeking, the two pages of documents you produced pursuant to Request No. 9 are not at all responsive.  Please produce the requested documents — including both those that are unused (blank) and those that were used (*i.e.*, already filled-out) for past shifts — as soon as possible.  If you feel that additional guidance from Plaintiff, whether on-site or otherwise, would further assist you in properly responding to this Request, please feel free to ask.

**D.**     **Defendant's Reply (from Its September 10 Letter)**

"After reasonable investigation, Defendant has already produced all responsive documents which exist."

**E.**     **Really?  Again, That Just Doesn't Seem Plausible.**

Multiple copies of this form are filled-in and utilized within MBFG each day it is open for business, without exception.  Considering that MBFG has been using this form for years, it is difficult to believe that no such documents from prior shifts happen to exist anywhere in MBFG's files.  This is particularly so when one considers that, at the very least, defendant should have taken steps to retain such documents from the point it became aware of this document request.  At the September 15 meet and confer session, as mentioned *supra*, Ms. Kepplinger acknowledged that defense counsel had not actually conducted an on-site inspection of defendant's files or computer(s); when Plaintiff expressed his concerns to Ms. Kepplinger about defendant's scant production in regard to this Request, she responded by informing

Plaintiff that "I talked to my client, and they said that they've given me everything."  Again, while Plaintiff probably would have been satisfied with Ms. Kepplinger's verification if it had been preceded by a firsthand search by defense counsel of MBFG's files, Plaintiff is hesitant, in light of defense counsel's superficial inquiry of its client and defendant's suspiciously meager production, to simply accept what amounts to defendant's word alone.  Plaintiff therefore requests that this Court order defendant to produce all documents that are responsive to this request, or, in the alternative, order defendant to specifically verify that it has produced all responsive documents in its possession, custody, or control.

*        *        *        *

## Request No. 15

### A.    Text of the Request

Documents relating to any request by any employee for reasonable accommodation(s) under the ADA or PHRA, including those which relate to any action(s) taken by you in response to any such request.

### B.    Defendant's Response

"Defendant objects to this document request as overly broad and unduly burdensome.  As written, this document request contains no temporal or geographic limitation. Subject to, and without waiving, the foregoing objections, Defendant continues to search for documents related to employees other than Plaintiff which are responsive to this request. Defendant will supplement its production if such documents exist and are located."

### C.    Plaintiff's Reply (from His August 10 Letter)

You objected to this request as "overly broad and unduly burdensome" because it "contains no temporal or geographic limitation."  Because of the substantial relevance of

-11-

documents responsive to this request, Plaintiff is not inclined at this time to agree to any modification of its parameters.  Please inform Plaintiff of the final results of your ongoing search in writing, and produce all responsive documents, as soon as possible.

### D.   Defendant's Reply (from Its September 10 Letter)

"This request sought documents relating to any request for reasonable accommodation made by other employees (without temporal restriction).  Defendant has produced documents for employees employed at any time during Plaintiff's two periods of employment.  Subject to, and without waiving the objections raised in its Response to Plaintiff's Revised First Set of Document Requests, and after reasonable investigation, please see the documents attached which are identified as CONFIDENTIAL MBFG/Nusbaum 001583-1588."

### E.   Defendant's Limited Production Is Insufficient.

Plaintiff has alleged that MBFG has engaged in a pattern and/or practice of discriminating against its employees on the basis of disability.  (*See* Third Am. Compl. ¶¶ 31-32, 64, 69, 78, 83.)  While its handling of requests by employees for reasonable accommodation during Plaintiff's employment is obviously relevant, its handling of such requests both before and after Plaintiff was employed would be highly probative on this issue as well.  *See, e.g.*, *EEOC v. Whitehall Hotel, Ltd.*, No. 03 C 6851, 2004 U.S. Dist. LEXIS 17631, at *4-*5 (N.D. Ill. Aug. 30, 2004); *Batt v. Kimberly-Clark Corp.*, No. 05-CV-0421-CVE-PJC, 2006 U.S. Dist. LEXIS 37482, at *9-*12 (N.D. Okla. June 6, 2006).  Such evidence also would tend to show an intent by defendant to discriminate against Plaintiff.  Therefore, defendant should be ordered to supplement its production consistent with the actual scope of the Request.

\*        \*        \*        \*

**Request No. 17**

**A.      Text of the Request**

The entire personnel file of each of your employees that held the position of Food Server at any time during the period June 30, 2005 to January 30, 2007.

**B.      Defendant's Response**

Defendant objected to this Request "because such files contain personnel data such as family relations, earnings, attendance records, references to medical insurance, and other irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence."

**C.      Plaintiff's Reply (from His August 10 Letter)**

Your objection to this request is moot, given that an appropriate Nondisclosure Agreement has already been duly executed by the parties and approved by the Court. Accordingly, please produce the requested documents as soon as possible.  Should you believe that certain information contained therein may appropriately be redacted or otherwise withheld, you may, of course, do so subject to Plaintiff's right to examine your privilege log and, if necessary, compel production of any such document(s).

**D.      Defendant's Reply (from Its August 14 Letter)**

"Defendant reiterates its objection to these requests and disagrees that its objection is moot simply as a result of the entry of a confidentiality agreement.  That confidentiality agreement was entered into between the parties in the instant litigation.  The information requested is the confidential information of Defendant's employees, not Defendant. Moreover, this request is an improper fishing expedition which invades the privacy of individuals who are not parties to this litigation."

**E.      Defendant's Current Position**

-13-

Defendant has refused to reconsider its position.

**G.    Argument**

This Request seeks what is commonly referred to as "comparator evidence," which courts have recognized to be particularly relevant in cases where disparate treatment has been alleged.  *See, e.g.*, *Lynch v. Johnstown Wire Technologies*, No. 05-201J, 2006 U.S. Dist. LEXIS 9376, at *3 (W.D. Pa. Mar. 9, 2006) ("In matters of pretext employment discrimination suits, the need to prove false any proffered reason for employment actions through comparison plays a vital role."); *Finch v. Hercules, Inc.*, 149 F.R.D. 60, 63 (D. Del. 1993) ("With respect to the substance of discovery requests in discrimination cases, wide latitude has been granted.  As courts have recognized, 'claims of disparate treatment of necessity require discovery of how others have been treated . . . .'" (quoting *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983))).  Additionally, although courts have occasionally called attention to the obvious concerns about privacy with regard to the discovery of personnel files, they have consistently declined to accord them any kind of special protection from the liberal disclosure standards embodied in Rule 26(b)(1).  *See, e.g.*, *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (stating that in employment discrimination litigation, "courts have customarily allowed a wide discovery of personnel files"); *see also, e.g.*, *Marcarelli v. Delaware County Mem'l Hosp.*, No. 86-1630, 1987 U.S. Dist. LEXIS 10320 (E.D. Pa. June 3, 1987) (ordering production of thirteen personnel files); *Gaul v. Zep Mfg. Co.*, No. 03-2439, 2004 U.S. Dist. LEXIS 1990, at *11-*13 (E.D. Pa. Feb. 5, 2004) (ordering defendant to produce entire personnel files to plaintiff); *Fox-Martin v. H.J. Heinz Operations*, No. 02-4121-JAR, 2003 U.S. Dist. LEXIS 23571, at *5-*6 (D. Kan. Dec. 19, 2003) (granting motion to compel and ordering defendant to produce fifteen personnel files).

-14-

Here, Plaintiff has appropriately limited his request to similarly-situated employees, as it seeks only the personnel files of food servers employed during Plaintiff's second period of employment (June 30, 2005 to January 30, 2007), each of whom shared the same supervisors as Plaintiff.  Moreover, because of the large variety of alleged infractions by Plaintiff for which he was disciplined by defendant, it is likely that the files of nearly all (if not all) of these food servers contain squarely relevant comparator evidence.  (As one former MBFG food server once commented, "every [server] at Monterey Bay gets written up for something.")

Defendant's confidentiality objection, asserting that the information is somehow protected from discovery essentially because it "belongs" to defendant's employees, not defendant (even though the information was freely and voluntarily disclosed to defendant, no guarantees of confidentiality were ever made by defendant, and such information is contained in files that are clearly the property of defendant), is disingenuous on its face.  It is also severely undercut by the fact that defendant has already agreed to produce (and has produced) the complete personnel files of several other employees after the parties had entered into the very same Nondisclosure Agreement which defendant now claims is insufficient to satisfy its (presumably identical) privacy concerns.  In any event, confidentiality orders have long been relied upon by courts and parties as an effective and adequate remedial measure in these types of situations, and, as the Court is aware, there is already one in force in the instant litigation.  *See, e.g.*, *Howard v. Rustin*, No. 06-00200, U.S. Dist. LEXIS 37235, at *14 n.11 (W.D. Pa. Apr. 30, 2008) (ordering production of personnel files and pointing out that "[t]o the extent the [defendants] assert that production of said personnel files would violate privacy rights, they may seek a protective order or a confidentiality agreement"); *Marcarelli*, 1987 U.S. Dist. LEXIS, at *1-*2 (rejecting defendant's objections and directing it to disclose personnel files subject to

confidentiality order); *Fox-Martin*, 2003 U.S. Dist. LEXIS 23571, at *5 ("Defendant has

demonstrated no basis to withhold the personnel files responsive to Request No. 9, and the Court

orders it to produce the files.  Nonetheless . . . since personnel files may contain embarrassing or

sensitive information . . . the Court orders that the documents provided in response to Request

No. 9 be deemed confidential.").

*        *        *        *

**<u>Request No. 32</u>**

  **A. Text of the Request**

    Documents that relate to any medical condition of Plaintiff, including, but not

limited to, notes of conversations with his doctors and letters from doctors concerning his

condition, internal memoranda between defendant's employees, documents prepared by Plaintiff

concerning his medical condition, and letters or notes of conversations between defendant and

any outside expert(s) concerning Plaintiff.

  **B. Defendant's Response**

    "Defendant objects to this request as vague.  Defendant has produced all

communications or doctor's excuses it received from any physician regarding Plaintiff as part of

MBFG/Nusbaum 00255-00423."

  **C. Plaintiff's Reply (from His August 10 Letter)**

    You have objected to this request as vague.  Please be more specific as to why

you believe this to be the case.  Also, your response indicates that "Defendant has produced all

communications or doctor's excuses it received from any physician regarding Plaintiff";

however, this is not responsive to the request insofar as it seeks, for example, "letters or notes of

-16-

conversations between defendant and any outside expert(s) concerning Plaintiff."  Therefore, please also amend your answer so as to render it fully responsive to the terms of the request.

###    D.    Defendant's Current Position

During the September 15 meet and confer session, defendant agreed that it would amend its response in accordance with Plaintiff's request.  As of the time of the filing of this Motion, it has failed to do so.

###    E.    Plaintiff Reqests That This Court Order Defendant to Amend Its Response.

Defendant has represented to Plaintiff that its amendment to its Response will be that it has produced all responsive documents.  While Plaintiff had already expected this to be the case, he still needs to have it in writing from defendant, for obvious reasons.

*     *     *     *

## Request No. 39

###    A.    Text of the Request

The entire personnel file of any employee hired as a Food Server and thereafter promoted to the position of Trainer.

###    B.    Defendant's Response

Defendant objected to this Request "because such files contain personnel data such as family relations, earnings, attendance records, references to medical insurance, and other irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence.  Such information is private and confidential.  Defendant further objects to this request as overly broad because it contains no temporal restriction and as written seeks information for employees employed when Plaintiff was not employed at the restaurant."

###    C.    Plaintiff's Reply (from His August 10 Letter)

-17-

You have objected to this request on three grounds.  Your first objection is that "such files contain personnel data such as family relations, earnings, attendance records, references to medical insurance, and other irrelevant information which is not reasonably calculated to lead to the discovery of admissible evidence."  As you are aware, the parties have entered into a Nondisclosure Agreement, which should sufficiently address any concerns defendant has related to the confidentiality of this information.  Your second objection is that the information requested "is private and confidential."  This is not a legally sufficient basis to withhold production of the requested documents.  As previously indicated, should you believe that certain information contained therein may appropriately be redacted or otherwise withheld, you may, of course, do so subject to Plaintiff's right to examine your privilege log and, if necessary, compel production of any such document(s).  Your third objection is that the request is "overly broad because it contains no temporal restriction and as written seeks information for employees employed when Plaintiff was not employed at the restaurant."  Such information is directly relevant to defendant's practices relating to the promotion of its Food Servers to the position of Trainer.  Additionally, it is legitimate for Plaintiff to examine said practices not only during the period of Plaintiff's employment, but also prior to the time Plaintiff was employed and after Plaintiff was terminated, in order to determine, for example, whether defendant's practices (if any) in this regard have been followed consistently.  Consequently, Plaintiff demands that the requested documents be produced as soon as possible.

### D.       Defendant's Reply (from Its August 14 Letter)

"Defendant reiterates its objection to these requests and disagrees that its objection is moot simply as a result of the entry of a confidentiality agreement.  That confidentiality agreement was entered into between the parties in the instant litigation.  The

information requested is the confidential information of Defendant's employees, not Defendant. Moreover, this request is an improper fishing expedition which invades the privacy of individuals who are not parties to this litigation."

### E.     Defendant's Current Position

Defendant has refused to reconsider its position.

### F.     Argument

As discussed with regard to Request No. 17, above, this Request seeks what is commonly referred to as "comparator evidence," which courts have recognized to be particularly relevant in cases where disparate treatment has been alleged.  *See, e.g.*, *Lynch v. Johnstown Wire Technologies*, No. 05-201J, 2006 U.S. Dist. LEXIS 9376, at *3 (W.D. Pa. Mar. 9, 2006) ("In matters of pretext employment discrimination suits, the need to prove false any proffered reason for employment actions through comparison plays a vital role."); *Finch v. Hercules, Inc.*, 149 F.R.D. 60, 63 (D. Del. 1993) ("With respect to the substance of discovery requests in discrimination cases, wide latitude has been granted.  As courts have recognized, 'claims of disparate treatment of necessity require discovery of how others have been treated . . . .'" (quoting *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983))).  Additionally, although courts have occasionally called attention to the obvious concerns about privacy with regard to the discovery of personnel files, they have consistently declined to accord them any kind of special protection from the liberal disclosure standards embodied in Rule 26(b)(1).  *See, e.g.*, *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (stating that in employment discrimination litigation, "courts have customarily allowed a wide discovery of personnel files"); *see also, e.g.*, *Marcarelli v. Delaware County Mem'l Hosp.*, No. 86-1630, 1987 U.S. Dist. LEXIS 10320 (E.D. Pa. June 3, 1987) (ordering production of thirteen personnel files); *Gaul v.*

*Zep Mfg. Co.*, No. 03-2439, 2004 U.S. Dist. LEXIS 1990, at *11-*13 (E.D. Pa. Feb. 5, 2004) (ordering defendant to produce entire personnel files to plaintiff); *Fox-Martin v. H.J. Heinz Operations*, No. 02-4121-JAR, 2003 U.S. Dist. LEXIS 23571, at *5-*6 (D. Kan. Dec. 19, 2003) (granting motion to compel and ordering defendant to produce fifteen personnel files).

Defendant's confidentiality objection, asserting that the information is somehow protected from discovery essentially because it "belongs" to defendant's employees, not defendant (even though the information was freely and voluntarily disclosed to defendant, no guarantees of confidentiality were ever made by defendant, and such information is contained in files that are clearly the property of defendant), is disingenuous on its face.  It is also severely undercut by the fact that defendant has already agreed to produce (and has produced) the complete personnel files of several other employees after the parties had entered into the very same Nondisclosure Agreement which defendant now claims is insufficient to satisfy its (presumably identical) privacy concerns.  In any event, confidentiality orders have long been relied upon by courts and parties as an effective and adequate remedial measure in these types of situations, and, as the Court is aware, there is already one in force in the instant litigation.  *See, e.g.*, *Howard v. Rustin*, No. 06-00200, U.S. Dist. LEXIS 37235, at *14 n.11 (W.D. Pa. Apr. 30, 2008) (ordering production of personnel files and pointing out that "[t]o the extent the [defendants] assert that production of said personnel files would violate privacy rights, they may seek a protective order or a confidentiality agreement"); *Marcarelli*, 1987 U.S. Dist. LEXIS, at *1-*2 (rejecting defendant's objections and directing it to disclose personnel files subject to confidentiality order); *Fox-Martin*, 2003 U.S. Dist. LEXIS 23571, at *5 ("Defendant has demonstrated no basis to withhold the personnel files responsive to Request No. 9, and the Court orders it to produce the files.  Nonetheless . . . since personnel files may contain embarrassing or

sensitive information . . . the Court orders that the documents provided in response to Request No. 9 be deemed confidential.").

Plaintiff expects that many personnel files responsive to this Request will already be responsive to Request No. 17, above; the only files that would not overlap would be those of Food Servers promoted to Trainer who were not employed during the (second) period of Plaintiff's employment.  The qualifications and work histories of all such employees are still highly relevant, however, because apart from their obvious value as comparator evidence (*i.e.*, by comparing individual employees' qualifications, etc., with Plaintiff's), the information in these files also would significantly contribute to Plaintiff's ability to conduct an aggregate-level analysis of certain characteristics common to Food Servers promoted to Trainer.  This would permit Plaintiff to determine what (if any) unwritten policies or practices might have existed within MBFG relating to the promotion of Food Servers to the position of Trainer, and, for that matter, how long any such policies or practices had been in place.  These conclusions could then be assessed (for consistency, etc.) against defendant's refusal to promote Plaintiff to Trainer.[2] *Cf. Basiru Kanaji v. Phila. Child Guidance Ctr. of Children's Hosp.*, No. 00-937, 2001 U.S. Dist. LEXIS 8670, at *10 (E.D. Pa. June 20, 2001) (justifying decision to limit number of other employees' personnel files discoverable by plaintiff specifically because "Plaintiff's job qualifications relative to his colleagues is not an issue").

*        *        *        *

---

[2]        Because there are far fewer Trainers than non-Trainers among Food Servers, and because Trainers are not often short-term employees at MBFG, limiting the data pool to only those Trainers who worked at MBFG while Plaintiff was employed is most likely too small a population to allow sufficiently fair and reliable inferences to be drawn from its data  — particularly where inferring the existence of an unwritten policy or practice (or, possibly, the absence thereof) over a time of several years happens to be the relevant objective.

## SPECIFIC INTERROGATORIES

**Interrogatory No. 1**

      **A.**      **Text of the Interrogatory**

Please provide and fully explain your specific reason(s) for changing the less restrictive accommodation originally provided to Plaintiff to the Restrictive Eating Policy (as described in the Third Amended Complaint).

      **B.**      **Defendant's Response**

"Defendant objects to this Interrogatory to the extent it characterizes the accommodation provided as 'restrictive' and further objects to Plaintiff's description of it as contained in the Third Amended Complaint.  Subject to, and without waiving the foregoing objection, Defendant made changes to the eating policy, as applied to Plaintiff because Plaintiff was eating in unauthorized areas (and on one occasion spilled an ashtray), was not eating pre-prepared food that he had brought from home, and was not locating a manager prior to taking his break.  In addition, after receiving Plaintiff's February 17, 2006, letter and meeting with Plaintiff, Defendant agreed to allow Plaintiff to take either a longer break or take two five-minute breaks during each of his shifts."

      **C.**      **Plaintiff's Reply (from his September 4 Letter)**

Your response to Interrogatory No. 1 is factually inaccurate.  Each of the reasons given in your response could not have existed (or, as to the allegations regarding the ashtray, did not occur) until *after* the original accommodation had been changed to the Restrictive Eating Policy (as described in the Third Amended Complaint).  The aspects of the Restrictive Eating Policy regarding authorized areas for eating, eating "pre-prepared" food, and first locating a manager were not in existence until the original accommodation provided to Plaintiff (which did

not contain these conditions) was changed to the Restrictive Eating Policy.  Consequently, it is not possible that the *reason(s) for* defendant's changing of the accommodation could be Plaintiff's alleged violations of conditions not existing (or events not occurring) until after the accommodation was changed.  This Interrogatory seeks the specific reasons, if any, that underlied defendant's decision to change its original accommodation to the Restrictive Eating Policy.  Please amend your response accordingly.

Additionally, you state as part of your response that "after receiving Plaintiff's February 17, 2006 letter and meeting with Plaintiff, Defendant agreed to allow Plaintiff to take either a longer break or take two five-minute breaks during each of his shifts."  This is merely a recitation of a purported fact, and as such is not responsive to the question presented.  Again, the Interrogatory requests "specific reasons for" defendant's change to the Restrictive Eating Policy, not a recitation of defendant's factual contentions already appearing elsewhere.  Please amend this part of your response accordingly.

Finally, your use of the word "agreed" in "Defendant agreed to allow Plaintiff to take either a longer break or take two five-minute breaks during each of his shifts" is materially misleading.  Plaintiff neither proposed nor requested either of these modifications; rather, they were unilaterally created and implemented by defendant notwithstanding Plaintiff's stated position during the February 17, 2006 meeting that they failed to address the fundamental deficiencies in the Restrictive Eating Policy.  Accordingly, there is absolutely no factual basis for defendant to claim that Plaintiff was party to this purported "agreement" with defendant.  Please amend your response so that it no longer contains this misleading language and accurately characterizes the parties' actions.

**D.     Defendant's Reply (from Its September 14 Letter)**

"As I understand your complaint with Defendant's response, you and my client see the case differently.  A disagreement of fact is permitted under the rules and does not require supplementation to our response."

(Defendant also included a footnote which stated, interestingly, that it "does not intend this as an admission that there are material facts in dispute.")

**E.     Relief Requested**

Plaintiff requests that the Court order defendant to appropriately amend and/or supplement its response to this Interrogatory.

*          *          *          *

**<u>Interrogatory No. 4</u>**

**A.     Text of the Interrogatory**

Have you ever decided not to terminate an employee for violating MBFG policy when, absent such special consideration not to terminate the employee, he or she would have faced termination pursuant to MBFG policy?  If so, please provide the name of each such employee, the name of any person involved in the decision not to terminate the employee, a full explanation as to how and why such a decision was reached, and all details relating to the communication of each such decision to the employee in question.

**B.     Defendant's Response**

"Defendant objects to this Interrogatory as vague.  Defendant does not know what constitutes 'special considerations' to which Plaintiff refers.  As such, Defendant cannot answer this interrogatory."

### C.     Plaintiff's Reply (from His September 4 Letter)

You have objected to this Interrogatory as vague.  More specifically, you have indicated that "Defendant does not know what constitutes 'special considerations' to which Plaintiff refers."  Consequently, you have refused to answer this Interrogatory.

Your failure to answer this Interrogatory is not acceptable.  Plaintiff believes that the Interrogatory is not ambiguous as to the information it requests, which is whether you have ever made a decision not to terminate an employee for violating MBFG policy, when that employee would normally have been terminated for such a violation(s) pursuant to such policy.  "Special consideration," as used here, refers only to whatever factor(s) ultimately resulted in the decision not to terminate an employee who had committed a policy violation for which termination was the prescribed disciplinary response.  It is used in a generic sense because any such factor(s) would be immaterial for purposes of responding to this Interrogatory (at least as far as the first part is concerned).  Therefore, Plaintiff requests that you fully respond to this Interrogatory without further delay.

### D.     Defendant's Reply (from Its September 14 Letter)

"Defendant further objects to this interrogatory as overly broad, seeking information that is not relevant to any claim or defense in the instant litigation and is not likely to lead to the discovery of admissible evidence.  Plaintiff was terminated for violating the terms of his last chance agreement.  Defendant has provided Plaintiff with documents related to all other employees placed on last chance agreements.  Information about all terminations has no relevance to your claim that you were discriminatorily discharged."

**E.** **Relief Requested**

Plaintiff requests that the Court order defendant to provide a complete and fully responsive answer to this Interrogatory.

*        *        *        *

**<u>Interrogatory No. 5</u>**

**A.** **Text of the Interrogatory**

Please explain how you believe the Restrictive Eating Policy you created (as described in the Third Amended Complaint) is consistent with the written request of Plaintiff's physician that Plaintiff be permitted to "take eating breaks during work shifts as necessary."

**B.** **Defendant's Response**

"Defendant objects to this Interrogatory to the extent it characterizes the accommodation provided as 'restrictive' and further objects to Plaintiff's description of it as contained in the Third Amended Complaint.  Defendant further objects to this Interrogatory because it is a contention interrogatory and is premature as discovery is currently ongoing. Subject to, and without waiving the foregoing objection, Plaintiff was permitted to take one longer or two five-minute breaks during his shift to eat.  Defendant did not instruct him about when during his shift that he could or could not take his break(s).  Plaintiff was only required to notify a manager prior to taking his break(s) and not to compromise guest service."

**C.** **Plaintiff's Reply (from His September 4 Letter)**

First, you have objected to this Interrogatory "because it is a contention interrogatory and is premature as discovery is currently ongoing."  However, Federal Rule of Civil Procedure 33(a)(2) specifically states that "[a]n interrogatory is not objectionable merely

because it asks for an opinion or contention that relates to facts or the application of law to fact . . . ."  Fed. R. Civ. P. 33(a)(2); *see also, e.g.*, *ClubCom, Inc. v. Captive Media, Inc.*, No. 02:07-cv-1462, 2009 U.S. Dist. LEXIS 14218, at *4-*5 (W.D. Pa. Feb. 24, 2009).  Consequently, this objection is not proper.

   Second, the answer you have provided notwithstanding your objections is unresponsive to the question asked.  You were asked to explain why you believe the provisions of the Restrictive Eating Policy can be reconciled with the the specific written request of Plaintiff's physician that Plaintiff be permitted to "take eating breaks as necessary."  Instead, your response merely restates certain parts of the Restrictive Eating Policy.  Significantly, you fail to compare the Restrictive Eating Policy's limitation on the quantity of "breaks" permitted during a shift with the lack of any such limitation in the physician's request.  Such material omissions make your response, in its current form, both incomplete and evasive.  Plaintiff therefore asks that you amend your response so that it directly and completely responds the question asked.

   **D.**  **Defendant's Reply (from Its September 14 Letter)**

   "Subject to, and without waiving the objections contained in its [Response], Defendant supplements its previous response by stating that the accommodation that was provided was consistent with the limited and vague information provided by Plaintiff's physician in the single note presented to Defendant because Plaintiff was permitted to take breaks as requested by his physician in the physician's note."

   **E.**  **Relief Requested**

   Plaintiff requests that the Court order defendant to provide a complete and fully responsive answer to this Interrogatory.

*     *     *     *

**Interrogatory No. 7**

      **A.**    **Text of the Interrogatory**

          With respect to the decision to terminate Plaintiff:

(a)      Identify all persons who participated in the decision, and describe the nature of their participation;

(b)      State the date, location, and identity of all participants with respect to all conversations of any of the persons identified in subpart (a) with each other and/or with Plaintiff concerning the termination and the reasons for the termination;

(c)      State the substance of each conversation identified in subpart (b); and

(d)      Identify all documents reflecting any such conversations.

      **B.**    **Defendant's Response**

          "Glenn Hawley and Tracy Nieman participated in the decision to terminate

Plaintiff.  Discussions between Hawley, Nieman and Colleen McCollum occurred between

January 28, 2007 and January 30, 2007.  Such discussions surrounded the terms and existence of

a Last Chance Agreement and Plaintiff's violation thereof."

      **C.**    **Plaintiff's Reply (from His September 4 Letter)**

          Your response to this Interrogatory is grossly insufficient.  With respect to subpart

(a), you do not describe the nature of the participation of either individual identified.  With

respect to subpart (b), your response lacks the specificity and detail that was clearly requested by

Plaintiff.  Subpart (c) requests that you state "the substance of each conversation identified in

subpart (b)," but your response vaguely recounts only that "such discussion surrounded the terms

and existence of a Last Chance Agreement and Plaintiff's violation thereof."  Finally, you do not

include a response to subpart (d).  If no such documents exist, please include a statement to this effect in your response.

**D.      Defendant's Reply (from Its September 14 Letter)**

"Defendant supplements its response to subpart (d) of this Interrogatory by incorporating by reference its response to Document Request # 21."[3]

**E.      Relief Requested**

Plaintiff requests that the Court order defendant to provide a complete and fully responsive answer to this Interrogatory.

*       *       *       *

**Interrogatory No. 9**

**A.      Text of the Interrogatory**

Have any other employees ever been terminated for any of the same reason(s) as Plaintiff?  If so, please identify:

(a)      each such employee;

(b)      the date of termination of every employee identified in subpart (a);

(c)      each and every reason(s) for the termination of each employee identified in subpart (a);

(d)      the specific circumstances surrounding the conduct of each employee identified in subpart (a) which led to that employee's termination;

(e)      any mitigating factor(s) or excuse(s) offered by any employee identified in subpart (a) in an attempt to avoid termination; and

(f)      any consideration given by you or your employees to any item identified in subpart (d).

---

[3]      This refers to defendant's production of Plaintiff's personnel file.

**B.** **Defendant's Response**

"Yes.  Amy Neff.  August 1, 2007.  Violation of Last Chance Agreement.
Absences in violation of Last Chance Agreement."

**C.** **Plaintiff's Reply (from his September 4 Letter)**

Your response to this Interrogatory contains insufficient detail.  In particular, you
do not provide any of the information requested by subparts (d), (e), and (f).  Accordingly,
Plaintiff asks that you amend your response so that all of the information requested is provided,
and in sufficient detail.

**D.** **Defendant's Reply (from Its September 14 Letter)**

"Defendant supplements its response to Interrogatory # 9 pursuant to Fed. R. Civ.
P. 33(d) by incorporating by reference documents previously produced as CONFIDENTIAL
MBFG/Nusbaum 00738-00826."

**E.** **Relief Requested**

Plaintiff requests that the Court order defendant to provide a complete and fully
responsive answer to this Interrogatory.

*       *       *       *

**Interrogatory No. 10**

**A.** **Text of the Request**

Please explain why you believe the Restrictive Eating Policy (as described in the
Third Amended Complaint) was a reasonable accommodation for Plaintiff's disability.

**B.** **Defendant's Response**

"Defendant objects to this Interrogatory to the extent it characterizes the
accommodation provided as 'restrictive' and further objects to Plaintiff's description of it as

contained in the Third Amended Complaint.  Defendant further objects to this Interrogatory because it is a contention interrogatory and is premature as discovery is currently ongoing. Subject to, and without waiving the foregoing objections, Defendant made an exception to its policies for Plaintiff allowing him to take break(s) based upon the only information it had received from his physician which requested that he be allow [sic] Plaintiff to 'take eating breaks during work shifts as necessary.'"

C.      **Plaintiff's Reply (from his September 4 Letter)**

You have objected to this Interrogatory "because it is a contention interrogatory and is premature as discovery is currently ongoing."  However, as was already mentioned with respect to No. 5, above, Federal Rule of Civil Procedure 33(a)(2) specifically states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to facts or the application of law to fact . . . ."  Fed. R. Civ. P. 33(a)(2); *see also, e.g.*, *ClubCom, Inc. v. Captive Media, Inc.*, No. 02:07-cv-1462, 2009 U.S. Dist. LEXIS 14218, at *4-*5 (W.D. Pa. Feb. 24, 2009).  Consequently, this objection is without merit.

In addition, your answer is unresponsive to the question asked.  You were asked to explain **why** you believed that the Restrictive Eating Policy (as described in the Third Amended Complaint) constituted a reasonable accommodation for Plaintiff's disability.  Your response, however, provides only a restatement of two facts: (1) that defendant made an exception to its policies, and (2) defendant received a note from Plaintiff's physician which requested that Plaintiff be allowed to "take eating breaks during work shifts as necessary." Plaintiff believes that, on its face, this answer  constitutes an evasive and incomplete response within the meaning of Federal Rule of Civil Procedure 37(a)(4).  Consequently, please amend your response so that it directly and completely responds the question asked; otherwise, Plaintiff

-31-

will have no other choice but to regard it as equivalent to a failure to respond (in accordance with Rule 37(a)(4)).

      **D.**    **Defendant's Reply (from Its September 14 Letter)**

"This answer is complete and does not require further supplementation."

      **E.**    **Relief Requested**

Plaintiff requests that the Court order defendant to provide a complete and fully responsive answer to this Interrogatory.

*     *     *     *

<strong>CONCLUSION</strong>

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order compelling defendant to produce responsive documents, and to provide complete answers to the aforementioned interrogatories, in response to Plaintiff's Revised First Set of Discovery Requests.

Respectfully submitted,

s/ Daniel J. Nusbaum

_____

Daniel J. Nusbaum
329 Highland Road
Pittsburgh, Pennsylvania 15235
(917) 567-3168
nusbaum2@gmail.com

*Pro Se* Plaintiff

Dated: October 8, 2009

## <u>DISCOVERY DISPUTE CERTIFICATE</u>

In accordance with Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 37.1, the undersigned hereby certifies that a good faith, reasonable effort was made to reach agreement with the defendant, through its counsel, on the matters set forth in the preceding Motion to Compel Production of Responsive Documents and Complete Answers to Interrogatories.  Such efforts (which have been summarized in the preceding Motion) were ultimately unsuccessful.

s/ Daniel J. Nusbaum
_____
Daniel J. Nusbaum
*Pro Se* Plaintiff

Dated: October 8, 2009

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

Plaintiff's Motion to Compel Production of Responsive Documents and Complete Answers to

Interrogatories was electronically served on counsel for the defendant via this Court's CM/ECF

system at the address listed below on the 8th day of October, 2009.

Christina I. Kepplinger, Esq.
ckepplinger@eckertseamans.com
James H. Norris, Esq.
jnorris@eckertseamans.com
Eckert Seamans Cherin & Mellott, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, Pennsylvania 15219


s/ Daniel J. Nusbaum
_____
Daniel J. Nusbaum
*Pro Se* Plaintiff